UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**RANDALL GREER,**

    **Plaintiff,**

v.                                    Case No: 6:15-cv-677-Orl-41GJK

**WAYNE IVEY, TOWN OF
INDIALANTIC, JAMES HAMAN and
DIOMEDIS CANELA,**

    **Defendants.**
_____/

**ORDER**

THIS CAUSE is before the Court on Plaintiff's Daubert Motion to Exclude Opinions of Non-Retained Defense Expert Krzysztof Podjaski ("Motion," Doc. 323).[1] Defendants James Haman ("Haman") and Diomedis Canela ("Canela") filed a joint Response (Doc. 331), which also incorporated by reference the Responses at docket entries 223 and 228.[2] For the reasons stated herein, Plaintiff's Motion will be denied.

**I.**     **BACKGROUND**

Plaintiff, Randall Greer, brings this action as the personal representative of his brother, Christopher Greer,[3] (Third Amended Complaint, Doc. 117, at 4), who was shot and killed by Defendants Corporal Haman and Deputy Canela of the Brevard County Sheriff's Office on January 13, 2013. Officer Scott Holstine was also on the scene. (Holstine Dep. Pt. 1, Doc. 173-18, at 30:1–

---

[1] Plaintiff has previously filed two motions that also brief these issues, (Doc. Nos. 200, 207), which were denied as moot by this Court's March 14, 2017 Order granting summary judgment for Defendants. (March 14, 2017 Order, Doc. 268). However, Plaintiff was permitted to refile this motion after that Order was partially reversed by the Eleventh Circuit.
[2] These are the Responses to the previous motions.
[3] To avoid confusion, Randall Greer will be referred to as "Plaintiff," and Christopher Greer will be referred to as "Christopher."

4). The incident occurred after Plaintiff called the police when Christopher threatened him with a knife and grabbed Plaintiff's wife[4] by the throat. (Randall Greer Dep. Pt. 1, Doc. 173-13, at 59:5–9, 60:2–6, 62:1–6; Christine Greer Dep., Doc. 173-11, at 131:25–132:7; 911 Phone Call Tr., Doc. 174-1, at 2).

Canela entered the home and observed a knife in a sheath on Christopher's side and Christopher walking towards the door. (Canela Dep. Pt. 2, Doc. 173-9, at 204:7–13, 204:19–21). Canela took a step back and warned Haman and Holstine that Christopher had a knife. (*Id.* at 198:20–25, 199:11–14, 205:21–24). Thereafter, Christopher slammed the door shut. (*Id.* 206:5–207:4; Holstine Dep. Pt. 2, Doc. 173-19, at 144:20–21). Ultimately, Officers Haman and Canela fired their weapons at Christopher, and eight shots struck and killed him. (Doc. 173-9 at 241:9–242:5, Haman Dep. Pt. 2, Doc. 173-16, at 193:1–2; Ernest Report, Doc. 183-1, at 8; Doc. 117 ¶ 310). The officers argued on summary judgment that their use of deadly force was reasonable. The Eleventh Circuit stated that "[t]he answer to that question . . . turns on whether, in the moment before the shooting, the deputies reasonably believed that Christopher posed an immediate threat to their safety." (Opinion of USCA, Doc. 308, at 7 (citing *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016))). Thus, "the reasonableness determination turns on two questions: Was Christopher holding a knife when he was killed? And, if so, what was he doing with it?" (*Id.*). Additionally, Defendants have raised as an affirmative defense, pursuant to section 768.36 of the Florida Statutes, that Christopher was intoxicated at the time of the shooting.

Dr. Krzysztof Podjaski ("Dr. Podjaski") is the medical examiner who performed the autopsy on Christopher. During his June 7, 2016 deposition, Dr. Podjaski was asked to express an opinion as to the position of Christopher's arm at the time he was shot in his underarm. (Podjaski

---

[4] Former Plaintiff Christine Greer indicated in her testimony that she was in the process of divorcing Plaintiff. Nevertheless, she will be referred to as Christine Greer or Plaintiff's wife throughout this Order as they were married at all times relevant to this matter.

Dep., Doc. 323-2, at 21:17–19). Plaintiff's Motion seeks to prevent Dr. Podjaski from testifying about that opinion. Plaintiff's Motion also seeks to have excluded the results from a July 14, 2016 toxicology test performed by Dr. Podjaski on Christopher's vitreous fluid, which sought to establish the ethanol concentration of the fluid. The Motion is brought pursuant to both Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702. Each will be discussed in turn below.

## II. RULE 26

### A. Legal Standard

Federal Rule of Civil Procedure 26(a)(2) sets forth the expert disclosure requirements, which provide that all expert witnesses must be disclosed and that certain experts must provide written reports in conjunction with the disclosure. The disclosure of an expert witness must be accompanied by a written expert report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Even if a witness is not required to provide a written report, however, they still must be disclosed, and the "disclosure must state: (i) the subject matter on which the witness is expected to present evidence . . . ; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

### B. Analysis

As noted, Rule 26(a)(2) sets forth two requirements pertaining to expert disclosures: the identity of the expert witness and either a summary of the expected opinion testimony or an expert report, depending on the nature of the expert witness's testimony. Expert reports are only required "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

It is undisputed that Dr. Podjaski was properly and timely disclosed as a non-retained expert with regard to the autopsy of Christopher because he was the medical examiner who conducted the autopsy in the normal course of his employment. Thus, Dr. Podjaski was not required to submit an expert report pursuant to Rule 26(a)(2)(B) in order to testify regarding the autopsy. *See AXA Equitable Life Ins. Co. v. Sands*, 5:06-cv-59/RS, 2006 WL 5217762, at *1 (N.D. Fla. Oct. 2, 2006) (holding that Rule 26(a)(2)(B) does not apply to medical examiner who performed an autopsy and was not retained or employed to provide expert testimony in the case). Experts that are not required to provide a written report must still provide a disclosure that states "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; . . . [and] a summary of the facts and opinions to which the witness is expected to testify." Rule 26(a)(2)(C). It is undisputed that Dr. Podjaski did timely produce his autopsy report which satisfied his disclosure requirements regarding the autopsy.

Despite the parties agreeing that Dr. Podjaski was a non-retained expert who could testify as to the medical examination without the production of an expert report, Plaintiff argues that Dr. Podjaski gave opinions that were outside the scope of the autopsy report and that transformed him into a retained expert. Plaintiff asserts that any opinions that are given outside the scope of the autopsy report should have been disclosed in an expert report pursuant to Rule 26(a)(2)(B) in order for them to be admissible at trial. *See Levine v. Wyeth Inc.*, 8:09-cv-854-T-33AEP, 2010 WL 2612579, at *1 (M.D. Fla. June 25, 2010) ("Where a doctor's opinion extends beyond the facts disclosed during care and treatment of the patient and the doctor is specially retained to develop opinion testimony, he or she is subject to the provisions of Rule 26(a)(2)(B)."). Plaintiff argues that Dr. Podjaski's opinion regarding the position of Christopher's arm when he was shot is outside the scope of the autopsy report and was not disclosed in an expert report. Therefore, Plaintiff requests that insofar as Defendants intend to elicit said opinion on the position of Christopher's arm, the Court should disallow it and that it should be stricken.

At his deposition, Dr. Podjaski was asked by Defense counsel to opine regarding the position of Christopher's arm at the time he was shot. Dr. Podjaski stated that based on his experience, and the lack of apparent abrasions on the wound in question as he saw it during his autopsy, it would appear to him that if the arm was closed there would be more abrasions on the wound. Therefore, he concluded that the arm was probably raised. Indeed, while answering the question, Dr. Podjaski referenced a photograph of the wound that was taken during the autopsy he performed. (*Id.* at 19:6–16). Clearly, Dr. Podjaski's opinion of Christopher's arm placement was based on his examination and autopsy. *See Singletary v. Stops, Inc.*, No. 6:09-cv-1763-Orl-19KRS, 2010 WL 3517039, at *7 (M.D. Fla. Sept. 7, 2010) (determining that a treating physician was not required to issue an expert report where the physician was testifying as to opinions developed "based on the examination and treatment of the patient" (quotation omitted)). Therefore, the Court will not strike Dr. Podjaski's opinions on arm placement for failure to provide an expert report.

Plaintiff's second Rule 26 argument is that the second toxicology report that Dr. Podjaski prepared should be stricken. By way of background, Dr. Podjaski had a toxicology report done analyzing Christopher's "chest blood" for blood alcohol content at the time of the autopsy. (Doc. 323-2 at 24:8–25:14 (discussing process for toxicology report and noting the initial report was received by Dr. Podjaski on February 8, 2013), 28:9–11 (discussing the blood alcohol content in Christopher's system), 29:8–22 (noting the report was done on chest blood because Dr. Podjaski could not obtain femoral blood due to Christopher's injuries)). Plaintiff hired an expert, who opined that vitreous fluid, instead of chest blood, would be a more reliable indication of blood alcohol content. (Doc. 223 at 3). When questioned about the contents of various drugs and alcohol found in Christopher's blood in the original toxicology report, Dr. Podjaski offered to run an additional report for a more complete analysis of all of the drugs that the original report showed to be in Christopher's system at the time of his death. (Doc. 323-3 at 32:12–16). The second report

tested Christopher's vitreous fluid, and was completed and produced to the parties two weeks after the close of discovery.

Plaintiff argues that, as to the second toxicology report, Dr. Podjaski is a retained expert because he prepared the second report "at the behest of the defense," who Plaintiff contends requested the report from Dr. Podjaski at the deposition and paid for the report to be run. (Doc. 323 at 4–7). Plaintiff misrepresents the record. It is clear in the deposition transcript that Dr. Podjaski offered to prepare the second toxicology report—Defendants did not request it. And, Dr. Podjaski made it clear that his office would pay for the report to be run. (*Id.* at 32:12–16, 34:16–21 (Defendants offering to cover the expense and Dr. Podjaski stating, "Our office will take care of that.")). And, the record reflects that Plaintiff did not object Dr. Podjaski's offer to run the report when he made it.

Plaintiff also argues that the report should be stricken as a sanction against Defendants because they improperly served the report on Plaintiff two weeks after the discovery deadline. While the updated toxicology report was submitted two weeks after the close of discovery, it was not due to any action or lack thereof on behalf of Defendants. Additionally, the second report produced results very similar to the first, and Plaintiff has not shown any prejudice from the slightly late disclosure of the report other than that the data is not favorable to Plaintiff's position. The Court will not strike evidence merely because it is unfavorable. *See Gomez v. City of Miami Beach*, No. 09-22988-CIV-JORDAN, 2012 U.S. Dist. LEXIS 198382, at *7–8 (S.D. Fla. Mar. 13, 2012) ("To be sure, the evidence undermines the defendants' case, but that, in itself, is not unfair prejudice."). Defendants will not be sanctioned for conduct that they had no control over and that was not done on their behalf. Indeed, the Court is sure that had the second report produced data more favorable to Plaintiff, he would be incorporating it into his trial strategy instead of seeking to strike it.

Accordingly, the second toxicology report will not be stricken.

## III. DAUBERT

### A. Legal Standard

Although opinion testimony is generally inadmissible, Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide opinion testimony in limited circumstances. Expert opinion testimony is admissible if: (1) "the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

"[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Pursuant to *Daubert*, the determination of admissibility is "uniquely entrusted to the district court," which is given "considerable leeway in the execution of its duty." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quotation omitted). However, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

The Eleventh Circuit has distilled the test for determining the admissibility of expert testimony under Rule 702 and *Daubert* into three basic inquiries—(1) is the expert qualified; (2) is the expert's methodology reliable; and (3) will the testimony assist the trier of fact. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

### B. Daubert Analysis

Plaintiff also seeks to exclude Dr. Podjaski's opinions on the second toxicology report and on Christopher's arm placement under the *Daubert* analysis. For the toxicology report opinions,

Plaintiff argues that they must be excluded because they are not the product of reliable principles and methods and because Defendant has not established chain of custody of the samples used in the report. For the arm placement opinions, Plaintiff argues that because Dr. Podjaski is unsure of the arm placement, the opinion is not reliable or helpful to a jury and must be excluded. Plaintiff does not challenge Dr. Podjaski's qualifications as an expert to perform autopsies and the Court sees no reason to *sua sponte* question his qualifications as a medical examiner.

### 1. Toxicology Report

As stated above, Plaintiff is arguing first that Dr. Podjaski's testimony regarding the second toxicology report should be excluded because it is not the product of reliable principles and methods, and second because there is no evidence establishing that the medical examiner followed chain of custody requirements.

As to the former, Plaintiff states "there is no evidence that proves the medical examiner complied with the Society of Forensic Toxicologists/American Association of Forensic Sciences Laboratory Guidelines . . . or the requirements of the College of American Pathologists Chemistry and Toxicology Checklist . . . . Moreover, there is no evidence that shows that the District 18 Medical Examiner's office is inspected or certified by the National Association of Medical Examiners." (Doc. 323 at 15). First, Plaintiff cites no authority indicating that compliance with the above list is required for toxicology tests to be reliable.

Moreover, there is no evidence that Dr. Podjaski did not in fact follow the requirements of these organizations. Dr. Podjaski stated that he was "board certified in anatomic pathology, . . . forensic pathology, and [that he has a] medical license to practice medicine in the state of Florida." (Doc. 323-2 at 8:21–24). And, he testified that his office still had all of the specimen samples and that they were "secured in [his] office in a frig[de]" that "[n]obody has access to." (*Id.* at 32:25–33:5). He also testified that the samples are in "secured vial[s]" stored in a temperature he believed

to be about "four centigrade."[5] (*Id.* at 34:6–11). Furthermore, Dr. Podjaski testified that the laboratory that performs the testing and prepared the toxicology report is certified and that there "is always chain of custody." (*Id.* at 35:16–36:4 (testifying that they do not do their own testing and that they send all testing to Wuesthoff lab because the lab that does the testing must be certified); *see also id.* at 52:1–2 ("everything—every single vial is protected in our office. The chain of custody is preserved.")).

Finally, any argument made by Plaintiff that the report should be excluded due to chain of custody is without merit. This is because "[g]aps in the chain of custody affect only the weight of the evidence and not its admissibility." *United States v. Ramirez*, 491 F. App'x 65, 73 (11th Cir. Fla. Sept. 28, 2012) (finding the district court did not abuse its discretion in admitting lab reports despite appellant's argument of a "total breakdown in the chain of custody" and quoting *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990)); *see also United States v. Hughes*, 840 F.3d 1368, 1383 (11th Cir. 2016). Further, any doubts as to the accuracy of the test results due to age or chemical decomposition is best developed on cross examination. Therefore, Plaintiff's arguments regarding chain of custody and what standards Dr. Podjaski, the laboratory, and his office may or may not have adhered too "will not preclude admissibility if the [offering party] lays a proper foundation for evidence at trial" and may then be borne out by Plaintiff on cross-examination. *United States v. Warnock*, 2015 U.S. Dist. LEXIS 155104, *12 (N.D. Ga. May 7, 2015) (quoting *Redden v. Calbone*, 223 F. App'x. 825, 830 (10th Cir. 2007) and collecting cases). The toxicology report and Dr. Podjaski's opinions on the report will not be excluded at this time. However, if the predicate is not laid at trial, Plaintiff may make a contemporaneous objection.

    2.    *Christopher's Arm Placement*

---

[5] Dr. Podjaski admitted that he was not exactly sure of the temperature, but that he believed it was close to four centigrade. (*Id.*).

Plaintiff argues that Dr. Podjaski's opinion regarding Christopher's arm placement should be excluded since Dr. Podjaski's opinion is not made with a reasonable degree of medical probability because he is unsure of his opinion. And, Plaintiff argues that Dr. Podjaski's opinion is not reliable or helpful to a jury.

Dr. Podjaski's opinion on Christopher's arm placement is an opinion he formed based on his examination of Christopher's gunshot wounds. He is not completely certain as to his opinion, but "absolute certainty is not required." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988). There is not total lack of foundation for his opinion, as he testified that the lack of abrasions around the wound indicated to him that the arm would have been in an upward position, and this is sufficient to keep the opinion from being excluded at this stage. *See Kearney v. Auto-Owners Ins. Co.*, 8:06-cv-595-T-24-TGW, 2007 WL 3231780, at *3 (M.D. Fla. Oct. 30, 2007) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." (quotation omitted)). Rather, Plaintiff's objection goes to the weight of Dr. Podjaski's testimony. *Se. Metals Mfg. Co. v. Fla. Metal Prods., Inc.*, 778 F. Supp. 2d 1341, 1344 (M.D. Fla. 2011) ("Any weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility."); *Kearney*, 2007 WL 3231780, at *3 ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." (quotation omitted)). To the extent Plaintiff argues that Dr. Podjaski's opinions are flawed or contrary to the evidence, this is a matter best addressed at trial by contemporaneous objection or vigorous cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that Plaintiff's Daubert Motion to Exclude Opinions of Non-Retained Defense Expert Krzysztof Podjaski (Doc. 323) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on December 23, 2019.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record