**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RANDALL GREER, et al.,                    CASE 6:15-cv-00677-CEM-GJK

     Plaintiffs,

v.

WAYNE IVEY, et al.,

     Defendants.

                       /

## THIRD JOINT FINAL PRE-TRIAL STATEMENT

Plaintiff, RANDALL GREER, as Personal Representative of the Estate of Christopher Greer, and Defendants, James Haman and Diomedis Canela, through their undersigned counsel and pursuant to Local Rule 3.06(c), of the United States District Court, Middle District of Florida, submit the following as their Third Joint Final Pre-Trial Statement:

## MEETING OF COUNSEL

Counsel for parties met in person on Tuesday, November 29, 2016, at the offices of DeBevoise & Poulton, P.A., Lake View Office Park, Suite 1010, 1035 South Semoran Blvd., Winter Park, Florida 32792 for the purpose of preparing this statement. Additionally, counsel have conferred by telephone and by electronic mail in connection with preparing this statement. An order entered on January 3, 2020 provides that a Third Joint Final Pre-Trial Statement be filed.

**1.     Basis of Federal Jurisdiction:**

The Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 in that a number of the claims in the case arise under the Constitution and laws of the United States. The Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367(a).

**2.     Concise Statement of the Nature of the Action:**

**A.     Plaintiff's Statement:**

Randall Greer, as the personal representative of the estate of Christopher Greer, his deceased brother, sued law enforcement officers for the unnecessary shooting death of Christopher Greer, who was home alone when two Brevard County Sheriff's deputies entered the Greer home without consent and killed Christopher Greer. Deputies fired 12 bullets into and through a closed door, knowing Christopher Greer was standing behind the door. The deputies intended to kill him, even though the law enforcement agencies were well aware Christopher suffered from mental and emotional troubles, was alone in his home, and was in need of Baker Act services. The deputies sought no assistance from available mental and emotional health counselors or experts.

Randall Greer called the police to his brother's Indialantic home at the direct suggestion of the Indialantic Chief of Police, who instructed Randall Greer to call the police to seek Baker Act and mental health treatment. At the time of his killing, Christopher Greer was not a danger to the police or anyone else.

The lawsuit alleges civil rights violations for excessive use of force resulting in death, wrongful death, assault, and battery.

**B.    Defendants' Statement:**

**Statement of Defendants Canela and Haman:**

This is an action brought under §1983 and also state law. Plaintiff's claims pending

at this time are:

Count III §1983 Excessive Use of Force against Haman

Count IV §1983 Excessive Use of Force against Canela

Count IX State law wrongful death claim against Haman

Count X State law wrongful death claim against Canela

Count XXII State law aggravated assault against Haman and Canela (Defendants

assert this Count is subsumed into the wrongful death claim)

Count XXIII State law aggravated battery against Haman and Canela (Defendants

assert this Count is subsumed into the wrongful death claim)

Defendants deny all claims against them and also assert affirmative defenses,

including:

As to the §1983 claims against Haman and Canela, the defense of qualified

immunity.

As to the state law claims against Haman and Canela, the immunity provided for in

§768.28(9)(a), Fla. Stat.

As to all state law claims, the decedent was intoxicated and under the influence of

alcoholic beverages and/or drugs to the extent that his normal faculties were impaired or

that he had a breath alcohol level of .08 or higher, and he was more than fifty percent at

fault for his own harm, such that plaintiff may not recover any damages pursuant to §768.36, Fla. Stat.

Use of force by Defendant Deputies Haman and Canela was privileged, and not clearly excessive. The force used was justified because such force was that which each deputy reasonably believed to be necessary to protect himself from bodily harm. §776.05, Fla. Stat.

**3.      Brief, General Statement of Each Party's Case:**

**A. Plaintiff's Statement:**

This lawsuit arises out of the tragic and preventable shooting death of Christopher Greer on January 13, 2013, by the joint conduct of Brevard County Sheriff's Deputies Canela and Haman. Christopher Greer was home alone in his Indialantic house. Nonetheless, deputies entered his home and fired 12 deadly bullets, through a closed door, in order to kill him, resulting in his painful death as a result of the excessive and unnecessary use of force by the deputies.

The tragedy of this case is evident from the events that transpired in the usually peaceful Indialantic community on January 13, 2013. Randall Greer and his wife, Christine, helped Randall's brother, Christopher, clean his house that had recently been occupied by Christopher and his elderly parents. Christopher was disabled due to a work-related accident. As a result of his disability, Christopher suffered bouts of deep depression and paranoia that required treatment. In addition, on the day of his death, Christopher was suffering from increased anxiety and depression due to the recent natural deaths of his parents, with whom he was especially close. Christopher had lived with his parents at the time of their deaths in late 2012 and resided in that very family residence at the time of his

shooting death. The home was a modest 2-story house visible on all sides and with no nearby adjoining neighbor.

Following their parents' death, Randall had increased concerns about his brother's fragile emotional state. To obtain needed mental health therapy for Christopher, sometime before January 13, 2013, Randall had contacted the Indialantic Chief of Police, Troy Morris, with whom he was very familiar. Chief Morris was personally aware of the Greer parents' recent deaths and knew of Christopher's fragile emotional health. Chief Morris discussed available options to obtain medical assistance for Christopher, specifically advised that Randall contact law enforcement if Christopher acted out, for the express purpose of enabling the police to Baker Act Christopher and obtain medical and emotional care for him. On January 13, Randall followed that specific advice when he called 911 seeking help from law enforcement to aid his brother's mental health recovery.

Before that day, the Indialantic Police Department and its officers were aware of Christopher's mental health condition due to numerous prior contacts with him. The Indialantic Police Department had conducted Baker Act investigations of Christopher Greer in October and December 2012. On those occasions, Christopher was a paranoid, vulnerable adult. Christopher believed people were breaking into his home and spying on him. Christopher frequently called the Indialantic Police Department but refused to let law enforcement officers intrude into his home. He lived alone in the few months since his parents died. Christopher was wary of anyone he did not recognize. Although paranoid, Christopher was not dangerous.

Scott Holstine of the Indialantic Police Department immediately responded to the 911 call. He met Randall and Christine outside Christopher's home. Randall informed Holstine about Christopher's depression and medical condition, asking for Baker Act assistance. Holstine instructed Randall and his wife to return to their nearby home, even though both Randall and Christine suggested they should remain outside Christopher's home for assistance. Holstine told Christine that his only purpose was to get medical treatment for Christopher and Baker Act. Holstine knew it was a "mental thing" and that Randall and his wife only wanted Christopher to get treatment. Holstine also knew that the elderly parents of both Randall and Christopher Greer had died recently. He also knew Christopher was alone in the house at that time. Randall and Christine Greer informed Holstine that they had taken away Christopher's workman's knife, and that they had previously removed all weapons from the home.

Holstine requested back-up assistance from both the Melbourne Beach Police Department and from the Brevard County Sheriff. Haman of the Brevard County Sheriff's Office promptly arrived on the scene. Holstine briefed Haman about what had transpired before Haman's arrival. He specifically informed Haman that Christopher's parents had died and that he thought the only known weapons inside the house were a disassembled cross-bow and household knives. Holstine explained that Christopher lived alone, and that the police call was to obtain mental health assistance for Christopher.

Gary Harrell, the shift supervisor for the Brevard County Sheriff's Office, did not go to the scene until after Christopher had been killed by the deputies. He gave no guidance to the on-scene sheriff's deputies, nor did he supervise them, even though he was the

supervisor on duty. Instead, Harrell allowed the two on-the-scene deputies, James Haman and Diomedis Canela, to take the actions that resulted in killing Christopher.

Intending to enter Christopher Greer's house with or without permission, Haman specifically called for a police shield to be brought to the home. Canela, who carried a shield as a part of his police-issued equipment, arrived on the scene after Holstine's briefing. Haman and Canela tried but could not persuade Christopher to come out of the house. During their entire time at the scene, they never saw Christopher outside his home. Since the garage door of Christopher's home was open, Haman and Canela decided to enter the garage. Carrying a ballistic shield and without obtaining permission, the sheriff's deputies opened the door inside the garage that led into the residence interior. They saw Christopher standing inside the house. Christopher tried to shut the interior door when it was opened, but Haman repeatedly kicked the door. Haman was unable to force the door open because Christopher, who was inside the house, had positioned himself against the door in order to keep it from opening.

Canela and Haman, both inside the garage, did not call for police assistance at the time, and requested no participation by mental health specialists. Instead, without any action having been directed against their safety, both deputies began shooting through the closed door leading to the interior of the house. Knowing Christopher was immediately on the interior side of the door, they fired twelve deadly shots that ripped through the closed door, with the intention of shooting into Christopher. Nine of the bullets struck and ultimately killed Christopher.

**B. Defendants' Statement:**

**Statement of the Case by Haman and Canela:**

At approximately 5:38 p.m. on January 13, 2013, Randall Greer called 911 and asked for immediate assistance because his brother, Christopher, had threatened him with a knife and grabbed Randall's wife, Christine, by the throat. The location for assistance was 700 North Shannon Ave. in the Town of Indialantic, Florida.

Indialantic police officer Scott Holstine arrived on scene. Randall told Officer Holstine what had happened, and that Christopher had gone back inside the residence. Officer Holstine attempted to speak to Christopher, who slammed the door in his face and said, "Don't even fucking think about it." Officer Holstine called for assistance, including from the Brevard County Sheriff's Office.

The first to arrive on scene was Cpl. James Haman. Officer Holstine told Cpl. Haman about what had occurred, and that Christopher was "signal 20," meaning that there was a history of mental illness, and that there was a history of suicide. Holstine and Haman attempted numerous times, over several minutes, to make contact with Christopher by using the public address system in Officer Holstine's patrol vehicle, but Christopher refused to respond.

Cpl. Haman called for further assistance from Brevard Deputy Canela, who he knew had with him in his car a ballistic shield, used to approach armed people. When Deputy Canela arrived, he and Cpl. Haman approached the front door, with the shield in front, to try to speak to Christopher. Officer Holstine was guarding the rear and watching upstairs. Christopher yet again refused to speak to the law enforcement officers.

The three men, Haman, Canela, and Holstine, then moved to the open garage area, which was very cluttered, and approached a door into the home. There, they tried to make contact with Christopher and then to open the door. Christopher appeared in the doorway and slammed it shut. Deputy Canela observed a knife in a sheath at Christopher's side. The deputies tried to make their way in, but Christopher braced against the door, blocking it. The deputies prepared to go back to the front of the house.

As they were doing so, they noticed that Christopher's shadow beneath the door from the garage into the home had moved away, and so the door was kicked open. Christopher then appeared coming back to the door, with a knife in his right hand, which was raised, moving towards the deputies. Fearing for their own safety, the deputies fired on Christopher as he came towards them with the knife, and as the door rebounded shut. Christopher was struck a number of times and died from his injuries. On autopsy, it was discovered that Christopher had a number of medications in his system and that his blood alcohol level was 0.222, or almost three times the legal driving limit .08.

At the scene, evidence collected included a bloodied knife in the folds of a jacket found at Christopher's feet. The knife was bent and broken in two. The inside of the door had a gouge mark in it, which could have been made by either that knife or by the knife in the sheath at Christopher's side. Earlier that day, Randall had seen both sides of the door and observed no marks or gouges in the door.

The deputies' efforts to make contact with and then to apprehend Christopher were reasonable and justified by all of the circumstances at the scene. Their use of force against

Christopher was justified, reasonable, and lawful, and no liability should be imposed upon

them, individually, or against the Sheriff.

**4.    A List of All Exhibits With Notation of All Objections Thereto:**

    **A.    Plaintiff's.**    See Attachment A.

    **B.    Defendants, Haman and Canela.**    See Attachment B.

Note: Plaintiff uses the following code to present objections:

| | |
|---|---|
| A | Authenticity |
| I | Inadmissible |
| R | Relevance |
| H | Hearsay |
| P | Privilege |
| UP | Undue prejudice |
| NPP | Not previously produced |
| INV | Involuntary |

**5.    A List of All Witnesses Who May Be Called at Trial:**

    **A.    Plaintiff's:**  See Attachment C.

    **B.    Defendants Haman and Canela:**    See Attachment D.

**6.    List of All Expert Witnesses Including a Statement of the Subject Matter and a Summary of the Substance of His or Her Testimony:**

    **A.    Plaintiff's Experts:**

**Dr. George Kirkham**. Dr. Kirkham is a police practices and procedures and use of

force expert.  Consistent with his expert report and deposition, Dr. Kirkham is expected to

opine that the Brevard deputies violated established crisis intervention procedures, police

practices and standards involving mentally ill persons, on the issues of use of force, police

practices and procedures, law enforcement defensive tactics, and prevailing standards for

law enforcement responses when confronting emotionally and mentally disabled individuals.

**Dr. John Marraccini**. Dr. Marraccini is a forensic pathologist expert. Consistent with his expert report and depositions, he is expected to opine as to the manner of death, autopsy findings, injury entry and exit wounds, tissue abrasions, number of gunshot wounds, the missile pathways, and resultant injuries, gunshot of the right armpit is interpreted by Dr. Marraccini as having occurred with the arm in a downward position. Dr. Marraccini will opine that the injury to the right armpit could not have resulted if the arm was raised in an upward position.

Plaintiff may call any of the defense listed experts.

**B.      Defendants' Experts:**

**Experts for Defendants Haman and Canela:**

**Mr. Richard Ernest**. Mr. Ernest is an expert in Forensic Ballistics.  Mr. Ernest is expected to testify concerning the location of the shots fired by the deputies relative to the door, the decedent, Christopher Greer, and where those shots travelled;  the angle of the shots through the door and the significance of the differences in angles of the shot trajectories;  the significance of the wound under the right arm, especially relative to the other wounds;  the appearance of the Frost Cutlery and Kabar knives when they were found at the scene, as well as the gouge on the inside of the door;  his review of the evidence at the Sheriff's Office; blood droplets found at the scene, indicating the sequence of events as Greer fell;  wood fragments from the door falling onto Greer, indicating location of Greer at time of shots.

**Dr. Richard Hough**.  Dr. Hough is an expert in police practices.  He is expected to testify that the efforts to apprehend Greer were reasonable, that the force used was reasonable under the circumstances, that the force used was reasonable under §776.05, Fla. Stat., and that the deputies acted appropriately and without fault, from a law enforcement perspective.  While the Defendants take the position that prior incidents or general plaintiff criticisms of dealing with the mentally ill are irrelevant to the claims to be tried in this case, to the extent that the Court allows such claims to proceed, Dr. Hough would testify as to the adequacy of Brevard Sheriff's policies and training on use of force, on dealing with the

mentally ill, and of the exceedingly low number of uses of force, deadly or otherwise, in general and specifically in situations involving the mentally ill.

**Dr. Josef Thundiyil**. Dr. Thundiyil is an expert in medical toxicology. He is expected to testify as to the results of the toxicology of both blood and vitreous fluid samples taken from Greer during the autopsy and to explain the significance of those results relative to the .08 breath alcohol standard set forth in §768.36, Fla. Stat. He is expected to address all issues of toxicology results, including reliability of sampling, testing, and reliability of results.

Defendants also expect to call non-retained expert **Dr. Krystztof Podjaski**, the medical examiner who performed the official autopsy on Greer. He is expected to testify to the manner of death, the injuries sustained by Greer, the distinctive injury to the right under arm of Greer and the likelihood that the injury occurred when the arm was raised, the gathering of chest blood and vitreous specimens for testing for drugs and alcohol, storage of those samples, and the results of the toxicology analysis of those samples.

Defendants may also call the following laboratory technicians to the extent necessary to authenticate or explain procedure for determining blood or other fluid testing:

1.   Kathie Carper, Deborah Wright, Donna Ewing
     (or representative of Wuesthoff Reference Laboratory)
     Wuesthoff Reference Laboratory
     6800 Spyglass Court
     Melbourne, FL 32940

     Expected to testify as to toxicology process, evaluation, and results.

2.   Susan Adams
     Wuesthoff Reference Laboratory
     6800 Spyglass Court
     Melbourne, FL 32940

     Expected to testify as to the toxicology report by Wuesthoff Reference Laboratory regarding decedent.

3.   Linda Sullivan
     Wuesthoff Reference Laboratory
     6800 Spyglass Court
     Melbourne, FL 32940

     Expected to testify as to the toxicology report by Wuesthoff Reference Laboratory regarding decedent.

**7.    Plaintiff's Claim for Money Damages, Elements of Such Claims, and the
Amount Being Sought with Respect to Each Element:**

**A.    Claimed by Plaintiff:**

Pursuant to the Civil Rights Attorneys' Fees Award Act, Plaintiff is entitled to
reasonable attorney fees as prevailing parties as part of the costs in §1983 suits 42 U.S.C.
§§ 1983 & 1988. Plaintiff seeks not less  than $40,000,000.00 in damages for the Estate of
Christopher Greer, as well as the decedent's survivors, against the respective defendants.
Plaintiff also seeks punitive damages from the willful, wanton, and excessive acts of the
defendants, to deter further acts of violence against the general public. That amount will
be decided by the jury, and Plaintiff asks that amount not exceed $90,000,000.00.

**8.    List of All Depositions to be Offered Into Evidence at Trial, Including a
Designation of the Pages and Lines to be Offered:**

**A.    Plaintiff:**

Dr. Marraccini – his entire deposition video or transcript may be used in lieu of in-
person testimony should he be unable to appear at trial.

Plaintiff reserves the right to list other depositions should a witness become
unavailable.

**B.    Defendants:**

The deposition of Dr. Krystztof Podjaski taken on June 7, 2016, page 6, line 1-page
37, line 6; page 46, line 14-page 47, line 21.

**C.    Plaintiff's Counter-Designation:**

The deposition of Dr. Krystztof Podjaski taken on June 7, 2016, page 37, line 14-
page 64, line 14.

**9.    Concise Statement of Facts Which are Admitted and Will Require No Proof
at Trial, Together with Any Reservations Directed to Such Admissions:**

a.  The date of the incident was January 13, 2013.
b.  The location of the incident was 700 North Shannon Avenue, Indialantic, Brevard
County, Florida.
c.  That Randall Greer is the brother of Christopher Greer.
d.  That Christopher Greer was not married at the time of the incident.

e. That Alexis Greer was the only child of Christopher Greer and she was 17 years old at the time of this incident.

f. That Alexis Greer was born on May 23, 1995.

g. That Randall Greer is the personal representative of the Estate of Christopher Greer.

h. James Haman was acting in the course and scope of his position as a law enforcement officer, a Brevard County Deputy Sheriff.

i. Diomedis Canela was acting in the course and scope of his position as a law enforcement officer, a Brevard County Deputy Sheriff.

j. Wayne Ivey is the Sheriff of Brevard County, Florida.

**10.    A Concise Statement of Applicable Principles of Law on Which There is Agreement:**

a. The Fourth Amendment's reasonableness standard governs the §1983 claims against Defendants Haman and Canela.

b. The immunity for state law claims against Defendants Haman and Canela are governed by §768.28(9)(a), Fla. Stat.

c. The parties stipulate that custodial witnesses are not required to establish authenticity of each other's exhibits, and reserve all objections as noted on the respective exhibit lists.

**11.    Concise Statement of Those Issues of Fact Which Remain to be Litigated:**

**A.    Plaintiff's Statement of Issues:**

Plaintiff alleges claims of Excessive Use of Force against Defendants James Haman, and Diomedis Canela, wrongful Death claims against Defendants James Haman and Diomedis Canela, aggravated assault against Defendants James Haman and Diomedis Canela, and aggravated battery against Defendants James Haman and Diomedis Canela.

**B.    Defendants' Statement of Issues:**

1. Whether, as to the remaining §1983 claims against Defendants Haman and Canela, either of those Defendants violated Christopher Greer's Fourth Amendment rights by use of excessive force.

2. Whether, as to the remaining state law claims against Defendants Haman and Canela, either of the Defendant deputies used clearly excessive force such as to establish battery liability.

3. Whether, as to the remaining state law claims against Defendants Haman and Canela they acted in bad faith, with malicious purpose, or with wanton and willful disregard of human rights, safety, or property as described in §768.28(9)(a), Fla. Stat.

4.    Whether the force used by the deputy defendants was justified because such force was that which each deputy reasonably believed to be necessary to protect himself from bodily harm. §776.05, Fla. Stat.

5.    Whether at the time of the incident Christopher Greer was under the influence of alcoholic beverages and/or drugs to the extent that his normal faculties were impaired or his blood alcohol level was 0.08% or higher and, that as a result of the influence of such alcoholic beverage, Christopher Greer was more than 50% at fault for the incident in question, such that the Estate is barred from recovery under §768.36, Fla. Stat.

6.    Whether, as to all state law claims sounding in battery or excessive force, against the Defendants Haman and Canela, the use of force by Defendant Deputies Haman and Canela was privileged, and not clearly excessive.

7.    Whether Cpl. James Haman was acting in the course and scope of his discretionary authority as a law enforcement officer, a Brevard County Deputy Sheriff.

8.    Whether Deputy Diomedis Canela was acting in the course and scope of his discretionary authority as a law enforcement officer, a Brevard County Deputy Sheriff.

9.    Whether Plaintiff is only entitled to recover those damages as set forth by the Florida Wrongful Death Act.

**12.    A Concise Statement of Those Issues of Law Which Remain for Determination by the Court:**

**Plaintiff's Statement of Issues:**

a.    Motion in Limine to Preclude Admission of Evidence, Reference, or Argument pertaining to Sections 768.36 and 768.81, Florida Statutes, or Alternative Motion to Strike Affirmative Defense, with Incorporated Memorandum of Law.

b.    Amended Motion to Bring Electronic Equipment for Use at Trial.

c.    Whether Defendants Haman and Canela are entitled to use an intoxication defense against Christopher Greer when the only remaining claims involve intentional acts, which cannot include comparative negligence defenses.

d.    Whether testimony or evidence of any potential intoxication of Christopher Greer should be allowable, as the only remaining claims against Defendants Haman and Canela are intentional tort claims.

e.    Admissibility of evidence regarding Christopher Greer's blood draw, blood alcohol content, and test results showing unquantified trace amounts of substances in his system.

**Defendants' Statement of Issues:**

a. Whether Defendants Haman and Canela are entitled to qualified immunity for the §1983 excessive force claims against them.

b. Whether Defendants Haman and Canela are entitled to immunity on the state law claims against them under §768.28(9)(a), Fla. Stat.

**13. A Concise Statement of Any Disagreement as to the Application of Federal Rules of Evidence or the Federal Rules of Civil Procedure:**

None

**14. A List of All Motions or Other Matters Which Require Action by the Court:**

1. Motion in Limine to Preclude Admission of Evidence, Reference, or Argument pertaining to Sections 768.36 and 768.81, Florida Statutes, or Alternative Motion to Strike Affirmative Defense, with Incorporated Memorandum of Law (Doc. 351)

2. Amended Motion to Bring Electronic Equipment for Use at Trial (Doc. 365)

3. Haman's and Canela's Motion in Limine to Exclude Evidence and/or Argument Regarding Certain Subject Matters (Doc. 349)

4. Haman's Motion for Authorization to Access and Use Electronic Audio/Video Equipment at Trial (Doc. 366)

**15.** <u>**PROPOSED VOIR DIRE QUESTIONS**</u>

A. Plaintiff's proposed Voir Dire Questions are attached hereto as Exhibit "E."

B. Proposed Voir Dire Questions by Haman and Canela are attached hereto as Exhibit "F."

**16.** <u>**PROPOSED VERDICT FORMS**</u>

A. Plaintiff's Proposed Verdict Forms are attached as Exhibit "G"

B. Defendants' Proposed Verdict Forms are attached as Exhibit "H"

C. Defendants' proposed Requested Interrogatories with Plaintiff's objections included are attached as Exhibit "I"

17.    **PROPOSED PRELIMINARY JURY INSTRUCTIONS**

    A.    Joint proposed Jury Instructions are attached as Exhibit "J" with noted objections and comments.  Subject to change based upon rulings by the Court.

18.    **SUBJECT TO CHANGE**

This joint pretrial statement, jury instructions, witness list, and exhibit list are subject to change based upon rulings by the Court.

DATED: January 8, 2020.

| | |
|---|---|
| *S/ Douglas R. Beam* | *S/ Bruce R. Bogan* |
| **DOUGLAS R. BEAM** | **BRUCE R. BOGAN** |
| Florida Bar No. 0515604 | Florida Bar No. 599565 |
| **DOUGLAS R. BEAM, P.A.** | **MELISSA J. SYDOW** |
| 25 West New Haven Ave, Suite C | Florida Bar No. 39102 |
| Melbourne, FL  32902-0640 | **HILYARD, BOGAN & PALMER, P.A.** |
| Telephone:  321-723-6591 | Post Office Box 4973 |
| *eservice1@dougbeam.com* | Orlando, FL  32802-4973 |
| Counsel for Plaintiff | Telephone:  407-425-4251 |
| | bbogan@hilyardlawfirm.com |
| *S. Benedict P. Kuehne* | msydow@hilyardlawfirm.com |
| **BENEDICT P. KUEHNE** | Counsel for Defendant Cpl. James Haman |
| Florida Bar No. 233293 | |
| **KUEHNE DAVIS LAW, P.A.** | *S/ Bruce W. Jolly* |
| 100 S.E. 2nd Street Suite 3550 | **BRUCE W. JOLLY** |
| Miami, FL 33131-2154 | Florida Bar No. 203637 |
| Telephone:  305-789-5989 | **PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.** |
| ben.kuehne@kuehnelaw.com | 2455 E. Sunrise Blvd., Suite 1216 |
| efiling@kuehnelaw.com | Ft. Lauderdale, FL  33304 |
| Counsel for Plaintiff | Telephone:  954-462-3200 |
| | bruce@purdylaw.com |
| | Counsel for Defendant Deputy Diomedis Canela |