UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RANDALL GREER,

    Plaintiff,

v.                                            Case No:   6:15-cv-677-Orl-41GJK

WAYNE IVEY, TOWN OF INDIALANTIC,
JAMES HAMAN and DIOMEDIS
CANELA,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court are Defendant Town of Indialantic's Renewed Motion for Attorney's Fees and Costs Pursuant to Section 768.79, Florida Statutes (Doc. 314), and Appellee Town of Indialantic's Motion for Attorney's Fees and Costs Pursuant to Section 768.79 Florida Statutes (Doc. 329). Plaintiff Randall Greer filed a response to the second motion (Doc. 337), and the Town of Indialantic has filed a reply to that response (Doc. 343). Plaintiff has not responded to the first motion and his time to do so has expired. After due consideration I respectfully recommend that both motions be granted.

### I. Background

This is a tragic case. On January 13, 2013, Plaintiff called the Indialantic Police Department for assistance at the home where his brother, Christopher Greer was living (Doc. 268 at 2, 4). Indialantic Police Officer Scott Holstine was first on the scene (Id., at 4). Plaintiff told Holstine that Christopher was in the home, needed a medical evaluation, and should be evaluated for involuntary commitment under the Baker Act (Id., at 5). Next to arrive were Brevard County Sheriff's Deputies James Haman and

Diomedis Canela (Id., at 6). They approached the front door of the residence, knocked, and asked Christopher to come out but he did not respond (Id., at 7).

The garage door was open, and the deputies entered, planning to go through the door in the garage that led into the home (Id.). While standing at the threshold of the door and surveying the scene Canela saw Christopher, wearing a sheath knife, walking towards the door (Id.). Canela warned the others that Christopher had a knife and then Christopher slammed the door shut (Id., at 7-8).

Haman kicked the door and it flew open at which time the deputies saw Christopher advancing towards them with a knife (Id., at 8). When Christopher reached the threshold of the door Haman fired his gun (Id., at 8-9). After Haman began to shoot, Canela also fired at Christopher (Id., at 9). The deputies fired a total of thirteen shots, eight of which struck Christopher (Id.). After the deputies ceased fire, they entered the house and found Christopher lying on the ground (Id.). He died at the scene (Id.).

Plaintiff filed this lawsuit in the state court, alleging that when the law enforcement officers shot and killed Christopher, they, along with multiple other Defendants, violated Florida's Wrongful Death Act, Florida common law, the Florida Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution (Doc. 1-2). The case was removed to this Court where Plaintiff was granted leave to file a second amended complaint (Docs.1, 75). The Second Amended Complaint alleged claims against a dozen Defendants including the Town of Indialantic, Troy Morris as Chief of the Indialantic Police Department, and Holstine (Doc. 76). These Defendants filed motions to dismiss, and on December 16, 2015, the Court dismissed significant portions of the Second

Amended Complaint with leave to file a third amended complaint (Docs. 80-83, 90, 110). The Third Amended Complaint alleged numerous counts including multiple violations of 42 U.S.C. § 1983, negligent training and supervision of the law enforcement officers, wrongful death, negligence, assault, battery, and negligent infliction of emotional distress (Doc. 117).

The Town of Indialantic, Chief Morris and Holstine motioned the Court to dismiss six counts in the Third Amended Complaint (Doc. 123). Other Defendants also filed motions to dismiss (Docs. 125-127, 130). On July 18, 2016, the Court dismissed all claims against Chief Morris and Holstine (Doc. 160 at 25). It did however, permit Plaintiff to proceed on his claim that Holstine owed a "duty … to communicate with law enforcement in a reasonable, safe, prudent, and non-negligent manner;" that Holstine breached that duty by not relating the particulars of Christopher's illness to the deputies before they entered the home; and that the Town was therefore liable to Plaintiff under the doctrine of respondeat superior (Doc. 117, ¶¶ 242-255; Doc. 160 at 25).

On November 18, 2016, the Town of Indialantic served the following proposal for settlement on Plaintiff:

**DEFENDANT'S PROPOSAL FOR SETTLEMENT**

Defendant TOWN OF INDIALANTIC, by and through undersigned counsel, hereby serves this Proposal for Settlement on Plaintiff, RANDALL GREER, as personal representative of the Estate of Christopher Greer, deceased, and states:

1. This Proposal for Settlement is being served pursuant to Florida Rule of Civil Procedure 1.442 and Florida Statute 768.79.

2. Pursuant to Florida Rule of Civil Procedure 1.442(b), this Proposal for Settlement is timely.

3. The party making this Proposal is Defendant TOWN OF

INDIALANTIC, and the party to whom this Proposal is made is Plaintiff RANDALL GREER, as personal representative of the Estate of Christopher Greer, deceased.

    4. This Proposal attempts to resolve all of Plaintiff's claims to which this rule applies between the parties to this Proposal for Settlement.

    5. This Proposal would resolve all damages that would otherwise be awarded in a final judgment against the TOWN OF INDIALANTIC in this action.

    6. This Proposal shall also be exclusive of any other offers of judgment or proposals for settlement. Acceptance of any other such offer or proposal shall constitute rejection of this offer.

    7. The total amount of the Proposal, including any non-monetary terms, is FIFTY THOUSAND and NO/100 DOLLARS ($50,000.00).

    8. There is no claim for punitive damages in this action. Therefore, there is no proposal to settle such a claim.

    9. This Proposal includes all costs and attorney's fees which may be part of Plaintiff's claim.

    10. The relevant conditions of this Proposal are that the Plaintiff will (1) execute the General Release attached hereto without modification or alteration; (2) be responsible for any and all liens that might apply to the settlement funds; and (3) dismiss this case with prejudice as to Defendant TOWN OF INDIALANTIC, CHIEF TROY MORRIS and OFFICER SCOTT HOLSTINE.

    11. This Proposal for Settlement shall be deemed rejected unless accepted within the time allotted by the rule and statute cited above.

    12. If this Proposal for Settlement is not accepted, the Court may impose sanctions pursuant to the applicable rule of procedure and statute cited above.

(Doc. 329 at 15-16). The general release attached to the proposal provides:

## **GENERAL RELEASE**

THIS GENERAL RELEASE is executed this __ day of __, 2016, by **RANDALL SCOTT GREER**, as personal representative of the Estate of Christopher Greer, deceased, hereinafter referred to as "Plaintiff." By executing this General Release, Plaintiff acknowledges being of lawful age

and of sound mind and is hereby fully and generally releasing and discharging the TOWN OF INDIALANTIC, CHIEF TROY MORRIS and OFFICER SCOTT HOLSTINE, their insurers, officers, directors, shareholders, agents, servants and employees, past and present, and any person, firm or corporation in privity with them, including the Florida Municipal Insurance Trust (hereinafter referred to collectively as "Defendants"), from any and all claims, rights and actions whatsoever.

## RECITALS

A.  On January 25, 2016, Plaintiff filed a Third Amended Complaint in the U.S. District Court, Middle District, Orlando Division, Case No. 6:15-cv-677-CEM-GJK, which arose from the fatal shooting of Christopher Greer by two deputies of the Brevard County Sheriff's Department, which occurred on January 13, 2013.

B. In the Third Amended Complaint, Plaintiff claims, among other things, that Officer Scott Holstine, Chief Troy Morris and the Town of Indialantic were negligent and, as a result thereof, the shooting of Christopher Greer occurred.

C. Plaintiff desires to execute this General Release in order to provide for a certain payment in full settlement and discharge of all claims which are or might have been brought against Defendants upon the terms and conditions set forth herein.

## RELEASE

Plaintiff hereby agrees as follows:

**1.      Release and Discharge**

In consideration of the payment called for herein, Plaintiff generally releases and forever discharges Defendants, their insurers, officers, directors, shareholders, agents, servants and employees, past and present, and their past, present and future officers, directors, shareholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest and assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereinafter be affiliated, of and from any and all past, present or future claims, appeals, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, expenses and compensation, or punitive damages which the Plaintiff now has or which may hereinafter accrue or otherwise be acquired on account of or in any way growing out of or which are the subject of the incident that occurred on or about January 13, 2013, including, without limitation, any and all known or unknown claims for bodily injuries, personal injuries, loss of services, loss of support, loss of earnings, loss of protection, loss of

> support and services, loss of net accumulations, loss of parental companionship, instruction, and guidance, funeral expenses, mental pain and suffering and medical expenses to the Plaintiff, which have resulted or may result from the alleged acts or omissions of the Defendants. This release and discharge on the part of the Plaintiff shall be a fully- binding and general release by the Plaintiff of the Defendants, their assigns and successors. The Plaintiff agrees to defend, indemnify and hold the Defendants harmless from and against all such claims, demands, obligations, actions, causes of action, damages, costs and expenses.

(Doc. 329 at 19-20). Plaintiff rejected the proposal because it was "not a good faith, reasonable proposal" (Doc. 329 at 24).

The Town of Indialantic, Canela, Haman, and Sheriff Wayne Ivey filed motions for summary judgment (Docs. 174, 183, 185, 194). The issues were briefed and the motions were granted on March 14, 2017 (Doc. 268). After receiving summary judgment, the Town filed a motion for attorney's fees pursuant to FLA. STAT. § 768.79 and a bill of costs (Docs. 274, 279). The Court concluded that the motion and bill were premature because no final judgment had been entered (Doc. 286). Judgment in favor of the Town was entered on August 8, 2017 whereupon the fee motion and bill of costs were refiled (Docs. 290, 292, 293).

Plaintiff appealed the judgment (Doc. 296), which was affirmed in part and reversed in part on March 25, 2019 (Doc. 308). Importantly, the judgment against the Town of Indialantic was affirmed (Id., at 16). The mandate was docketed on September 16, 2019 (Doc. 309). Following the mandate, the Court reopened this case and directed that renewed motions for fees and costs be filed no later than October 7, 2019 (Doc. 312). The Town timely filed its renewed motion for $27,483.00 in fees and $1,198.25 in costs (Doc. 314). It also filed a separate motion to tax costs (Doc. 317), that is the subject

- 6 -

of a pending report and recommendation (Doc. 443). Greer has not responded to the motion for fees (Docket).

On September 20, 2019 the Town filed its Motion for Attorney's Fees and Costs Pursuant to Section 768.79 Florida Statutes in the Eleventh Circuit (Doc. 329 at 1-50). The motion seeks $31,141.00 in fees and an unspecified amount of costs for the appeal (Id.). On November 5, 2019, the Eleventh Circuit transferred this motion to the Court for consideration as to entitlement and the amount of fees to be awarded (Doc. 328; Doc. 329). Plaintiff filed a response to the Town's motion for appellate fees (Doc. 337), and the Town filed a reply (Doc. 343).

## II. Legal Standard

Florida law provides that "[i]n any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on the defendant's behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award." FLA. STAT. § 768.79(1). This statute, and FLA. R. CIV. P. 1.442 which implements the statute "are intended to reduce litigation costs by encouraging settlement." Golisting.com, Inc. v. Papera, 229 So. 3d 862, 864 (Fla. 4th DCA 2017).

Rule 1.442 provides for the serving of a proposal for settlement on a Plaintiff "no earlier than 90 days after the action has been commenced" and no "later than 45 days before the date set for trial or the first day of the docket on which the case is set for trial,

whichever is earlier." Rule 1.442(b). The proposal must be in writing and must "identify the applicable Florida law under which it is being made." Rule 1.442(c)(1). The proposal must also:

> (A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;
>
> (B) state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served, subject to subdivision (F);
>
> (C) state with particularity any relevant conditions;
>
> (D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;
>
> (E) state with particularity the amount proposed to settle a claim for punitive damages, if any;
>
> (F) state whether the proposal includes attorneys' fees and whether attorneys' fee are part of the legal claim; and
>
> (G) include a certificate of service in the form required by Florida Rule of Judicial Administration 2.516.

Rule 1.442(c)(2). "A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party." Rule 1.442(c)(3). "Notwithstanding subdivision (c)(3), when a party is alleged to be solely vicariously, constructively, derivatively, or technically liable, whether by operation of law or by contract, a joint proposal made by or served on such a party need not state the apportionment or contribution as to that party." Rule 1.442(c)(4). Proposals are "deemed rejected unless accepted by delivery of a written notice of acceptance within 30 days after service of the proposal." Rule 1.442(f)(1).

By statute, the offer must:

> (a) Be in writing and state that it is being made pursuant to this section.
>
> (b) Name the party making it and the party to whom it is being made.
>
> (c) State with particularity the amount offered to settle a claim for punitive damages, if any.
>
> (d) State its total amount.

FLA. STAT. § 768.79(2). If these requirements are satisfied, then:

> Upon motion made by the offeror within 30 days after the entry of judgment or after voluntary or involuntary dismissal, the court shall determine the following: (a) If a defendant serves an offer which is not accepted by the plaintiff, and if the judgment obtained by the plaintiff is at least 25 percent less than the amount of the offer, the defendant shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served, and the court shall set off such costs in attorney's fees against the award. When such costs and attorney's fees total more than the amount of the judgment, the court shall enter judgment for the defendant against the plaintiff for the amount of the costs and fees, less the amount of the award to the plaintiff.

FLA. STAT. § 768.79(3)(a).

"Proposals under the offer of judgment statute must strictly conform to these statutory and procedural requirements to entitle the offeror to attorneys' fees because the statute is in derogation of the common law that ordinarily requires each party to pay its own attorneys' fees." Anderson v. Hilton Hotels Corp., 202 So. 3d 846, 852 (Fla. 2016). "Additionally, the proposal under the statute and rule must be sufficiently clear and free of ambiguity to allow the offeree the opportunity to fully consider the proposal." Id. However, perfection is not required, the Florida Supreme Court has recognized that "given the nature of language, it may be impossible to eliminate all ambiguity" from a proposal for

- 9 -

settlement. State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So. 2d 1067, 1079 (Fla. 2006). Florida law "does not demand the impossible. It merely requires that the settlement proposal be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification." Id. "Therefore, parties should not 'nit-pick' the validity of a proposal for settlement based on allegations of ambiguity unless the asserted ambiguity could 'reasonably affect the offeree's decision' on whether to accept the proposal for settlement." Carey-All Transp., Inc. v. Newby, 989 So. 2d 1201, 1206 (Fla. 2d DCA 2008) (quoting Nichols, 932 So.2d at 1079); American Home Assurance Co. v. D'Agostino, 211 So. 3d 63, 65-66 (Fla. 4th DCA 2017).

A proposal for settlement is considered ambiguous, and therefore unenforceable, if it is impossible for the offeree to meet its terms. Diecidue v. Lewis, 223 So. 2d 1015, 1018 (Fla. 2d DCA 2017). And, an offeree should be able to independently evaluate and settle his or her respective claim without the actions or assent of a third party. Schuller v. Geovera Specialty Ins. Co., No. 8:16-cv-2606, 2019 U.S. Dist. LEXIS 119890, at *4-5 (M.D. Fla. Apr. 30, 2019); Gonzalez v. Claywell, 82 So. 3d 1000, 1001 (Fla.1st DCA 2011); Attorneys' Title Ins. Fund, Inc. v. Gorka, 36 So. 3d 646, 649 (Fla. 2010).

An entity or individual who has been dismissed from a lawsuit is not a party for purposes of Rule 1.442 and § 768.79. Carey-All Transp., 989 So. 2d at 1205.

"The offeree bears the burden of proving the absence of good faith with respect to the offer." Zendejas v. Redman, 334 F. Supp. 3d 1249,1255 (S.D. Fla. Sept. 25, 2018).

### III. Discussion

**A. Enforceability of the Proposal for Settlement**

Plaintiff contends that the Town's proposal for settlement is unenforceable

because the requirement that he dismiss his claims against Chief Troy Morris and Holstine with prejudice was impossible to fulfill inasmuch as they were, at the time, not parties to the case (Doc. 337 at 1). This, according to Plaintiff, renders the proposal for settlement ambiguous (Id.). Tellingly, when Plaintiff rejected the proposal, he said it was because the proposal was "not a good faith, reasonable proposal" (Doc. 329 at 24). Plaintiff did not claim that the proposal was in any way ambiguous.

Plaintiff's contention that performance of the proposal was impossible is wrong. He always had the ability to satisfy the requirements of the proposal for settlement. Plaintiff has not provided any reason (and I am unaware of any), why he could not have instructed his lawyer to prepare, sign, and file a paper dismissing all claims he had against the Town, Chief Morris and Holstine with prejudice. Nor am I aware of any reason why Plaintiff's lawyer could not have complied with such an instruction. The fact that Chief Morris and Holstine were not parties at the time did not preclude Plaintiff from taking this action. The legal effect of the paper is a separate issue that is not relevant to Plaintiff's ability to comply with this condition of the proposal for settlement. In sum, the inclusion of Chief Morris and Holstine did not make the proposal for settlement ambiguous.

Plaintiff argues in the alternative that if Chief Morris and Holstine are considered third parties for purposes of settlement, then the proposal is invalid because it fails to apportion the $50,000 offered between them (Id.). I am not sure I know what Plaintiff means when he refers to Chief Morris and Holstine as "third parties." I proceed on the assumption Plaintiff means that while they were not parties to the proposal for settlement they were beneficiaries.

Plaintiff's argument relies on the holding in Audiffred v. Arnold, 161 So. 3d 1274 (Fla. 2015). There, the court explained that "[t]he purpose of the apportionment requirement in the rule [1.442] is to allow each offeree to evaluate the terms and the amount of the offer as it pertains to him or her." Id. at 1278. The court said "that when a single offeror submits a settlement proposal to a single offeree pursuant to section 768.79 and rule 1.442, and the offer resolves pending claims by or against additional parties who are neither offerors nor offerees, it constitutes a joint proposal that is subject to the apportionment requirement in subdivision (c)(3) of the rule." Id. at 1280.

The first flaw in Plaintiff's argument is that the holding in Audiffred does not apply in this case. Audiffred is based on a version of Rule 1.442 that was not in effect when the proposal was made. The version of the rule that was in effect when the Town made its proposal included subsection (c)(4) which provides that "when a party is alleged to be solely vicariously, constructively, derivatively, or technically liable, whether by operation of law or by contract, a joint proposal made by or served on such a party need not state the apportionment or contribution as to that party." In re The Amendments to the Florida Rules of Civil Procedure, 52 So.3d 579, 588 (Mem) (Fla. 2010). The only claim pending against the Town when the proposal was made, was that it was liable to Plaintiff under the doctrine of respondeat superior. Accordingly, apportionment as to the Town was not required. Moreover, when Plaintiff considered the proposal, he had no claims pending against Chief Morris and Holstine since they were not parties to the case. See Carey-All Transp. Inc., 989 So. 2d at 1205 ("[W]e cannot conclude that an entity or individual who has been dismissed from a lawsuit is a 'party' for purposes of rule 1.442 and section 768.79."). Accordingly, apportionment of the proposal to Chief Morris and Holstine was

not required. Conditioning the proposal for settlement on the release of these nonparties' liability based on the same underlying action speaks to the breadth of the release, not the need to apportion settlement proceeds amongst parties pursuant to the rule. Lazzell v. Wedden, No. 4:17-cv-185, 2018 U.S. Dist. LEXIS 228510, at *5-7 (N.D. Fla. May 10, 2018) (citing Carey-All Transp., 989 So. 2d at 1205).

For these reasons, I conclude that the proposal for settlement was not ambiguous and that Plaintiff is liable to the Town for its reasonable attorney's fees and costs incurred after the proposal was rejected.

**B. Reasonable Attorney's Fees and Costs**

The Court employs the lodestar approach as the first step in calculating a reasonable fee for the services of the Town's attorneys. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam) (citing Hensley, 461 U.S. at 433; see Fla. Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1150 (Fla. 1985) (Florida courts have also adopted this approach). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. "[T]he lodestar as calculated in Hensley presumptively includes all of the twelve factors derived from the ABA Code of Professional Responsibility DR 2–106 (1980) and adopted in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), except on rare occasions the factor of results obtained and, perhaps, enhancement for contingency." Norman, 836 F.2d at 1299.

The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19 (abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).

Once the Court has determined the lodestar, it may adjust the amount upward or downward based upon a number of factors including the results obtained. Norman, 836 F.2d at 1302. "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436). The Court is "an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Norman, 836 F.2d at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

The time billed is viewed as "the most useful starting point for determining the amount of a reasonable fee." Hensley, 461 U.S. at 433. The movant should present records detailing the amount of work performed. Counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." Id. at 434. In demonstrating that their hours are reasonable, counsel "should have

maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity." Norman, 836 F.2d at 1303. "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." ACLU of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) (quotations omitted). Once the movant produces adequate billing records, "[t]he fee opponent then 'has the burden of pointing out with specificity which hours should be deducted.'" Rynd v. Nationwide Mut. Fire Ins. Co., No. 8:09-cv-1556-T-27TGW, 2012 U.S. Dist. LEXIS 37973, at *9 (M.D. Fla. Jan. 25, 2012) (quoting Centex-Rooney Constr. Co. v. Martin Cty., 725 So. 2d 1255, 1259 (Fla. Dist. Ct. App. 1999).

Plaintiff has not disputed the attorney and paralegal time, hourly rates, or total amounts claimed. When a party fails to respond, that is an indication that the motion is unopposed. Foster v. The Coca-Cola Co., No. 6:14-cv-2102-Orl-40TBS, 2015 WL 3486008, at *1 (M.D. Fla. June 2, 2015); Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014)[1] (citing Kramer v. Gwinnett Cty., Ga., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004); Daisy, Inc. v. Polio Operations, Inc., No. 2:14-cv-564-FtM-38CM, 2015 WL 2342951, at *1 (M.D. Fla. May 14, 2015) (when defendant did not respond court could consider motion to compel unopposed); Brown v. Platinum Wrench Auto Repair, Inc., No. 8:10-cv-2168-T-33TGW, 2012 WL 333803, at *1 (M.D. Fla. Feb. 1, 2012) (after party

---

[1] "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." CTA11 Rule 36-2.

failed to respond, court treated motion for summary judgment as unopposed). Here, the Court may proceed on the basis that the amounts sought are not opposed.

Fees are sought for the services of F. Scott Pendley, an AV-Rated shareholder at Dean, Ringers, Morgan & Lawton, P.A., who and has been with the firm since 1982 (Doc. 293-3 at 1). Pendley has been board certified in civil trial law since 1992 (Id.). His work on the case was performed at the rate of $170 per hour (Doc. 293-3 at 2).

Eric J. Netcher also worked on the file (Doc. 329 at 26). Netcher was an associate and then partner at Dean, Ringers, Morgan & Lawton, P.A. (Id., ¶¶ 2, 5). He has been licensed to practice law in Florida since 2013 (Id., ¶ 2). Netcher served as a federal law clerk to a district judge prior to joining the firm (Id.). His time on the case was billed at $145 and $150 an hour as an associate, and at $175 per hour after he became a partner (Doc. No. 293-3 at 3; Doc. 329, ¶ 5).

Fees are also sought for work performed by paralegals billed at the rate of $85 per hour (Doc. 293-3 at 3; Doc. 329 at 28).

Pendley performed 87.6 hours of work on the case at the trial level after the proposal for settlement was served (Doc. 293-3 at 2). Netcher performed 57.5 hours of work at the trial level and 185.8 hours at the appellate level (Doc. 293-3 at 3; Doc. 329 at 27). Paralegal time totaling 49.7 hours was charged at the trial level and 19.5 hours on appeal (Doc. 329 at 28). Billing records showing when the services were performed, what was done, by whom, the time increments recorded, and the fees charged support the claim for reimbursement (Doc. 293-3 at 5-27; Doc. 329 at 29-50).

Plaintiff has not objected to any of the requested hours. I have reviewed the time entries and find that they are within the range of reasonableness. Accordingly, I respectfully recommend approval of the hours expended as requested.

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted). In determining if the requested rate is reasonable, the Court may consider the applicable Johnson factors and may rely on its own knowledge and experience. Norman, 836 F.2d at 1299-1300, 1303. "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." Id. at 1299 (citations omitted). Satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances or opinion evidence of reasonable rates. Id.

The Town failed to submit any evidence, other than its lawyer's opinion, as to the reasonableness of the rates charged. However, in this instance, the error is not fatal. First, Plaintiff has not disputed the hours or rates charged. Second, because the Court is an expert on the subject of attorney's fees it can find, based upon its own knowledge and experience that the rates charged in this case are reasonable. Norman, 836 F.2d at 1303. Here, I find the rates charged are below prevailing market rates and are in the range of what is referred to in the vernacular as "insurance defense rates." In other words, the rates are below market rates. Consequently, I find the rates charged to be reasonable. Thus, the total award of fees for each motion is as follows:

Trial fees

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| F. Scott Pendley | 87.6 | $170 | $14,892.00 |

| Eric Netcher | 57.5 | $145 | $8,337.50 |
| Paralegal[2] | 49.7 | $85 | $4,224.50 |
| **Total** | 194.8 | | **$27,454.00**[3] |

Appellate fees

| **Attorney** | **Hours** | **Rate** | **Total** |
|---|---|---|---|
| Eric Netcher | 185.8 | $145/$150/$175 | $29,405.50 |
| Paralegals | 19.5 | $85 | $1,657.50 |
| **Total** | 194.8 | | **$31,136.00**[4] |

**C.    Costs**

In its Renewed Motion the Town requests $1,198.25 in costs incurred after November 18, 2016 pursuant to FLA. STAT. § 769.79 (Doc. 314 at 4). The motion refers back to the Town's previously filed Proposed Bill of Costs (Doc. 292). But, the Town does not indicate which costs are included in its claim for statutory costs or whether those costs have also been claimed in its separate motion to tax costs upon which a report and recommendation is pending (Doc. 317; Doc. 443). Therefore, I respectfully recommend the Town's request for costs be denied without prejudice to it filing a new motion seeking

---

[2] The paralegal who worked on this matter at the trial level is not identified by name in the Town's motion.

[3] There is a discrepancy between the amount requested in the Renewed Motion, $27,483, and the amount reflected in the supporting affidavit and time entries of $27,454 (Doc. 293-3; Doc. 314 at 4). I used the amounts supported by counsel's affidavit and billing entries.

[4] The Town has requested a paralegal's rate of $85 per hour but one entry includes a one hour charge for $90 with no explanation as to who the biller is or what their role was (Doc. 329 at 44, 50) (see time entry for April 24, 2018 for REC). As the Town has provided no information for that person or that hourly rate, I adjusted the rate downward to $85 per hour to conform with the hourly rate awarded for paralegal's fees.

costs in this matter to the extent those costs may differ from the costs the Town seeks in its separate motion.

## IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) Defendant Town of Indialantic's Renewed Motion for Attorney's Fees and Costs Pursuant to Section 768.79, Florida Statutes (Doc 314), be **GRANTED** and that the Town be awarded $27,454 in professional fees for services performed in the district court;

(2) Appellee Town of Indialantic's Motion for Attorney's Fees and Costs Pursuant to Section 768.79 Florida Statutes (Doc. 329), be **GRANTED** and that the Town be awarded $31,136 in professional fees for services performed in the appellate court; and

(3) That the Town's prayers for costs be **DENIED without prejudice**.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on May 11, 2020.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties