## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**RANDALL GREER,**
          **Plaintiff/Appellant,**

**v.**                               **CASE NO. 6:15-cv-00677-CEM-GJK**

**JAMES HAMAN and DIOMEDIS**
**CANELA,**
          **Defendants/Appellees.**
_____/

### NOTICE OF APPEAL

Notice is hereby given that plaintiff/appellant Randall Greer, individually and as Personal Representative of the Estate of Christopher Greer, appeals to the U.S. Court of Appeals for the Eleventh Circuit from this court's Final Judgment (DE450), filed August 20, 2020, rendered after the denial of timely filed post-trial motions (DE437). The Final Judgment is attached.

                               Respectfully submitted,

                               */s/ Benedict P. Kuehne*
                               **BENEDICT P. KUEHNE**
                               Florida Bar No. 233293
                               **SUSAN DMITROVSKY**
                               Florida Bar No. 0073296
                               **MICHAEL T. DAVIS**
                               Florida Bar No. 63374
                               **KUEHNE DAVIS LAW, P.A.**

1

100 S.E. 2 St., Suite 3105
Miami, FL 33131-2154
Tel: (305) 789-5989
ben.kuehne@kuehnelaw.com
susand@kuehnelaw.com
mdavis@kuehnelaw.com

*S/ Douglas R. Beam*
**DOUGLAS R. BEAM**
Florida Bar No. 515604
**RILEY H. BEAM**
Florida Bar No. 100512
**DOUGLAS R. BEAM, P.A.**
25 W. New Haven Ave. Suite C
Melbourne, FL 32901
(321) 723-6591 Tel
eservice1@dougbeam.com

## CERTIFICATE OF SERVICE

I CERTIFY the foregoing was filed with CM/ECF on September 17, 2020, to:

Counsel for Canela
**Gregory James Jolly**
**Richard Allen Giuffreda**
Purdy, Jolly, Giuffreda, Barranco, & Jisa, P.A.
2455 E Sunrise Blvd Ste 1216
Ft Lauderdale, FL 33304-3115

Counsel for Haman
**Bruce R. Bogan**
**Melissa Jean Sydow**
Hilyard, Bogan & Palmer, P.A.
105 E. Robinson Street, Suite 201
Orlando, FL 32802

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RANDALL GREER,**

> **Plaintiff,**

**v.**                                    **Case No:  6:15-cv-677-Orl-41GJK**

**WAYNE IVEY, TOWN OF
INDIALANTIC, JAMES HAMAN
and DIOMEDIS CANELA,**

> **Defendants.**

_____

# JUDGMENT IN A CIVIL CASE

**Decision by Court.**    This action came before the Court and a decision has been rendered.

> **IT IS ORDERED AND ADJUDGED**

> Plaintiff's Motion for New Trial (Doc. 437) is **DENIED**. Judgment is entered in favor of

Defendants, James Haman and Diomedis Canela and against Plaintiff, Randall Greer,

providing that Plaintiff shall take nothing on his claims.

Date: August 20, 2020

> ELIZABETH M. WARREN,
> CLERK

> s/AJ, Deputy Clerk

# CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b)  **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5:** The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.  **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RANDALL GREER, et al.,                    CASE 6:15-cv-00677-CEM-GJK
        Plaintiff,

v.

WAYNE IVEY, et al.,
        Defendants.
_____/

### PLAINTIFF'S MOTION FOR NEW TRIAL, WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff Randall Greer, as personal representative of the Estate of Christopher Greer, deceased, moves for a new trial or for relief from judgment and an order vacating the verdict under Federal Rules of Civil Procedure 59 and 60.

## I.   INTRODUCTION

This federal civil rights and state torts wrongful police shooting lawsuit arises from the Defendants, James Haman and Diomedis Canela, firing 12 shots through a door, of which eight shots struck Christopher Greer, causing his death while alone in his home. (V3:22-23). After a jury trial, the defendants were found not liable (V7:12-13).

## II.   ARGUMENT

### A.   Erroneous admission of evidence that the State Attorney declined to prosecute the Defendants

Under Eleventh Circuit precedent, evidence of an acquittal is inadmissible in a civil case. *Watkins v. Broward Sheriff's Office*, 771 Fed. Appx. 902, 910 (11th Cir.

1

2019). Similarly, "'a federal trial court commits reversible error when it permits the plaintiff in a suit for fire insurance proceeds to present evidence of his nonprosecution or acquittal on related criminal arson charges.'" *Munoz v. State Farm Lloyds*, 522 F.3d 568, 572 (5th Cir. 2008) (quoting *Rabon v. Great Southwest Fire Ins. Co.*, 818 F.2d 306, 309 (4th Cir. 1987); *accord Kelly's Auto Parts, No. 1 v. Boughton*, 809 F.2d 1247, 1252 (6th Cir. 1987); *American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 325 (3d Cir.1985).

This is because "a prosecutor's decision to nolle prosse may take into account many factors irrelevant in a civil suit, such as the higher standard of proof required for criminal conviction." *Rabon*, at 309; *see also American Home*, at 325 ("prosecutorial discretion may take into account many other factors not relevant in a civil suit"); *Kelly's Auto Parts*, at 1252 ("not all laymen are aware of the complexities inherent in a prosecutor's deliberations concerning whether or not to seek a grand jury indictment").

In this case, the Court erred in admitting evidence that after Special Agent Bliss submitted his report to the State Attorney as required, the State Attorney declined to prosecute (V4:31-45). The defense contention, that "It was brought out on direct" is not supported by the record (V4:31, 43). Review of the trial transcript leaves no doubt that the plaintiff did not open the door by asking a question that would elicit evidence of the State Attorney review of the case during questioning (V4:14-15):

> Q And do you eventually complete a report of the information you
> collected for use by law enforcement, no matter which agency?

2

A Yes. We write the reports. We get the crime scene completed, all of the dispatch calls, the dispatch reports, every report. Everything involving the shooting, we collect that, write the reports for that, and then we submit that to the state attorney's office.

Agent Bliss' answer was nonresponsive and did not open the door to prejudicially irrelevant evidence. To the extent the defense objected to the answer, the defense should have objected or moved to strike the answer as non-responsive. *See Lust v. Sealy, Inc.*, 277 F. Supp. 2d 973, 995 (W.D. Wis. 2003) (explaining that "defendant cannot argue that plaintiff 'opened the door' to this line of questioning. [Witness's] answer that 'we probably wouldn't be here' was nonresponsive to plaintiff's question, which required only a yes or no. Defendant could have objected at that point and asked that the jury disregard the answer, but it failed to do so. Thus, there was no reason to allow [Witness] to speculate further."). *See also United States v. Juvera-Estrada*, 246 F.3d 677 (9th Cir. 2000) (explaining that witness's "answer was not responsive to the question, and the question did not 'open the door' to further exploration on redirect as the district court ruled").

## B. The Court's *sua sponte* requirement that plaintiff choose between state law and federal law claims was error.

The verdict forms and jury instructions presented by the parties in the pretrial statement included both state and federal law claims (DE367-7, DE367-8). None of the proposed verdict forms sought separate damages for each state and federal law claim (DE367-7:1-2; DE367-8:2-3): On its own motion, the Court proposed that plaintiff choose between his state law claim and federal law claim (V4:119-20). Plaintiff's counsel objected to the exclusion, explaining the jury was entitled to return

3

verdicts on both the federal and state law claims (V5:257-58 ; V5:257-58 ). When the Court asked if presenting both the state law and federal law claims could result in inconsistent verdicts, plaintiff reminded the Court that the causes of actions had different elements (V5:260).

The Court's *sua sponte* requirement that counsel choose between his state law claim and federal law claim was erroneous. Other Florida district courts have routinely submitted both the state and federal law claims to the jury in the manner proposed by both parties' verdict forms. *See* Composite Exhibit 1 (compilation of jury verdicts in Florida district court proceedings, submitting both the state law and federal civil rights claims to the jury for consideration). There was no concern of double-dipping, because the verdict form only sought one set of compensatory damages. And the causes of actions are vastly different. As both parties' jury instructions reflected, the claims had different elements and different affirmative defenses. The exclusion of the state law claim constituted reversible error.

> **C.  Renewed motion for directed verdict on state law affirmative defense. Section 776.05 does not apply, because the deputies were not making a lawful arrest.**

Plaintiff renews his motion for directed verdict as to the defendants' state law affirmative defenses (V6:27-28). Although the Court did not submit the state-court claim and affirmative defenses to the jury, plaintiff's motion for directed verdict is still ripe and remains outstanding.

Section 776.05, Florida Statutes, titled "Law enforcement officers; use of force in making an arrest," provides that law enforcement "need not retreat or desist from

4

efforts to make a lawful arrest because of resistance or threatened resistance to the arrest." § 776.05, Fla. Stat. Under the statutory provision, "[t]he officer is justified in the use of any force . . . . [w]hich he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the **arrest**." § 776.05(1), Fla. Stat. (emphasis added).

The statute's plain language and case law make clear that the defense only applies to police officers who are making an arrest. *See State v. Peraza*, 226 So. 3d 937, 946 (Fla. 4th DCA 2017) (finding that § 776.05 was inapplicable where the officer was "responding to an emergency and investigating a disturbance, but was not making an arrest"). Significantly, custody does not mean arrest. Under Florida law, the term "custody" is not synonymous with "arrest," because the term "custody" is a broader term that encompasses both "detention" and "arrest." *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989) ("We thus conclude that 'custody' need not consist of the formal act of an arrest, but can include any detention.").

At trial, the deputies did not claim that they were arresting Christopher Greer. For example, Haman said he was taking Christopher into custody (V2:62):

> Q    And what was your intent at that point in time when you were going to reopen the door?
>
> A    First was to take him into custody, to secure him, and then to check the residence.

Canela similarly did not claim  he was arresting Christopher, as established by questioning by his counsel (V2:239):

> Q    On this particular night, in light of what had occurred, was he

5

> going to be arrested before he was going to be Baker Acted?

A    Usually with Baker Acts, if there's a -- if there's a felony, they have to go to jail first. If it's a misdemeanor, then they can go to the treatment center. But then it depends on the agency if they want to file misdemeanor charges.

There was no evidence from which a jury could find that the deputies were making an arrest.[1] The defense under § 776.05(1) therefore did not apply in this case.

This affirmative defense also did not apply because the defense failed to produce evidence that they were making a *lawful* arrest when entering the home. *See* § 776.05, Fla. Stat. (providing that law enforcement "need not retreat or desist from efforts to make a ***lawful*** arrest because of resistance or threatened resistance to the arrest" (emphasis added)). The defense produced no evidence that they had a warrant to enter the home to arrest Christopher Greer, and the defense failed to establish an exigent circumstance authorizing a warrantless entry into the home to effectuate a warrantless arrest. Indeed, the defense successfully secured exclusion of evidence concerning the propriety of the warrantless entry and warrantless arrest.[2]

"The Fourth Amendment generally prohibits the warrantless entry of a

---

[1] Significantly, neither party asked for the standard excessive force during a lawful arrest instruction (DE367-10:30-34). The defendants requested an instruction on custody. Likewise, the Court noted during the charge conference: "I tend to agree with you that arrest isn't the perfect verb in this particular case considering the circumstances." (V5:281; V628).

[2] Indeed, having excluded evidence relevant to the question of whether the entry into the home and attempted arrest were lawful where there was no warrant, the defendants necessarily waived consideration of an affirmative defense that would allow deadly force if they were effectuating a lawful arrest.

person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "A warrantless intrusion may be justified by hot pursuit of a fleeing felon, or imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling." *Minnesota v. Olson*, 495 U.S. 91, 100 (1990) (internal citations omitted). In *Olson*, exigent circumstances did not justify the warrantless entry into a duplex to arrest an overnight guest where law enforcement knew there was no suggestion of danger to other occupants inside the duplex and it was evident that the suspect was going nowhere.

Here, the trial evidence established that Christopher was alone in the home (V2:101, V5:159). He was barricaded inside the home (V2:105) and it was evident that he was going nowhere (V2:271). Because the deputies never established the arrest was lawful," the affirmative defense did not apply.

**D. The excessive force jury instruction, the failure to define intentional, and exclusion of hedonic damages constituted reversible error.**

*1. The excessive force instruction was erroneous.*

Both parties' joint pretrial statement agreed that the standard instruction on use of force during a lawful arrest did not apply to the facts of this case and proposed alterations (DE367-10:30-34). The instruction as given was an erroneous statement of fact and law that requires a new trial. First, there was no evidence that the deputies were arresting Christopher Greer and the deputies did not request such an instruction. *See supra*. Second, the instruction erroneously invited the jury to

7

consider factors beyond the question of whether the deputies feared for their safety at the time of using deadly force. The Court instructed the jury (V6:52):

> When making a lawful arrest, an officer has the right to use reasonably necessary force to complete the arrest. Whether a specific use of force is excessive or unreasonable depends on factors such as the crime's severity, whether a suspect poses an immediate violent threat to others, whether the suspect resists or flees; the need for application of force, the relationship between the need for force and the amount of force used, and the extent of the injury inflicted.

Because the deputies were not involved in making an arrest and because there was no basis[3] for finding a lawful arrest, the only factor relevant to whether deadly force could be used was whether Christopher Greer posed an immediate violent threat to the deputies. Yet, the jury was instructed to consider Christopher's nonviolent resistance of the deputies' attempt to enter his home when deciding whether the use of force was excessive (V6:52).

Plaintiff's proposed instruction, in contrast, would have properly instructed the jury that "an officer may use deadly force when there is an objectively reasonable fear that the person poses an imminent threat of bodily harm to the officer or others." (DE367-10). The instruction was a proper statement of the law. *See Robinson v. Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005); *Singletary v. Vargas*, 804 F.3d 1174, 1181- 82 (11th Cir. 2015); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1246-

---

[3] There was no basis for the jury finding the arrest was lawful, because the Court excluded evidence on the question of whether the warrantless arrest and warrantless entry into the home was lawful. Having excluded evidence tending to show that the arrest was unlawful, the defendants could not then seek an instruction on the use of deadly force while making a lawful arrest.

47 (11th Cir. 2003). Furthermore, the instruction as given did not adequately cover this issue; it confused the standard. *See* Conroy v. Abraham Chevrolet-Tampa, Inc., 375 F.3d 1228, 1233 (11th Cir. 2004) ("When reviewing a district court's failure to give a requested instruction, even if the requested instruction correctly states the law, we will only reverse if (1) the contents of the requested instruction are not adequately covered by the jury charge and (2) the requesting party suffers prejudicial harm.").

### 2. *The Court erred in not defining intentional for the jury.*

As evidenced by the Jury Foreperson's underlining of the word "intent" on page 10 of Court's Instructions to the Jury (DE415), the element of intent was critical to the Jury's decision-making process. The trial court erred in failing to define intentional (V6:40).

### 3. *The Court erred in not allowing instruction to the jury regarding indemnity of the deputies*

Defense counsel's opening statement left a misleading impression that the deputies would be personally liable for any damages awarded in the case (V1:217):

> I want you to be reminded -- the evidence is going to show this anyway
> -- that he is suing on behalf of the estate and he's suing these two
> Brevard County Sheriff deputies individually. He is seeking an award
> against them individually. The significance of that will be more obvious
> later.

This was misleading because of Florida law that provides indemnity for fees and judgments against law enforcement officers in civil lawsuits. § 111.07, Fla. Stat. (authorizing employer-provided legal representation in civil cases); § 111.071(1)(a),

9

Fla. Stat. (authorizing employer-indemnification of federal civil rights judgements and/or settlements). The Sheriff had provided full legal representation and was expected to similarly cover any judgment. The argument opened the door to evidence and instruction on Florida indemnity. The exclusion of this evidence and failure to give an instruction was erroneous (V2:201- 209).

> **4.    *The Court erroneously excluded hedonic damages from the jury's consideration.***

Plaintiff sought hedonic damages for the Estate, which was defined as damages for Christopher Greer's loss of enjoyment of life as well as his pain and suffering from the moment he was shot until the moment of his death. This Court erroneously excluded hedonic damages available for the federal civil rights violations (V5:295, 298-301, 303-05; V6:36). In *Howard v. Wilkinson*, 379 F. Supp. 3d 1251, 1255 (M.D. Fla. 2019), District Judge Paul G. Byron determined that hedonic damages are available in federal civil rights actions, even if they are not available under the Florida Wrongful Death Act. The court reasoned, "Because the purpose of § 1983 is to provide compensation for actual damages—not a subset of those damages—the FWDA is inconsistent with the compensatory purposes of that federal law." *Id*. The district judge accordingly **allowed** a claim for hedonic damages in the civil rights action after granting plaintiff's motion *in limine* to allow evidence of hedonic damages. *Id*. at 1256. The Court erroneously excluded hedonic damages from the jury's consideration of damages for the federal claim.

## E.    **Errors stemming from expert testimony**

**1.      Error in allowing the defense expert to testify that the deputies were arresting Christopher Greer.**

The defendants asked their expert, Richard M. Hough, if Christopher Greer was being arrested (V5:249). Over the plaintiff's objection, the expert responded: "In the training that I conduct on arrest situations of just this type, yes, it's my understanding they were going in there to arrest Christopher Greer." (V5:249). Plaintiff properly objected that there was no factual basis for the opinion (V5:249). As previously explained, the deputies did not claim they were arresting Christopher Greer.[4] At most, Haman claimed that he was trying to take Christopher Greer into custody (V2:62), which under Florida law is not the same thing as an arrest. *Kaisner*, 543 So. 2d at 734.

**2.      Error in allowing the defense expert, Richard Ernest to testify regarding blood spatter.**

Mr. Ernest has no expertise in blood spatter analysis and the analysis was not in his report. It was accordingly error for him to testify as to the blood spatter pattern (V5:150-151):

> Q Did you do -- from your report, your tool mark work, your forensic work, did you do blood spatter analysis?
>
> A No.
>
> Q That's not an area that you specialized in with your laboratory, forensic ballistics consultant?
>
> A Only insofar as I have taken various courses in blood pattern

---

[4] A simple pdf search of the transcript of the defendants' testimony for the word "arrest" establishes they made no such claim at trial.

11

interpretation. But what I did notice was a pattern on his legs that basically said to me those are blood droplets that are dropping almost straight down and splattering out evenly from -- from what I can tell. That's a little bit different. Also, there's blood spatter or blood splatter, as some people call it, on the door. There's actually a lot of that in that scene.

Q Did you include your blood spatter discussion you're having with us today in your report?

A I did mention that in deposition and --

Q Did you --

A -- I'm not sure whether I put it into my report.

This issue was not preserved, but as will be discussed, it may be considered in deciding whether to grant a new trial.

### 3. Error in allowing the defense expert Richard Ernest to testify about armpit wound.

The Court erroneously overruled defense objection to Richard Ernest's testimony about Christopher Greer's armpit wound, where Mr. Ernest did not have the requisite expertise (V5:105-107). The issue was also raised in the pretrial *Daubert* motion (DE327) and was renewed at trial (V5:105-107).

### 4. Error in allowing the defense expert Richard M. Hough to testify as fact that Christopher Greer was armed at the time he was shot which was not supported by the evidence

A key issue at trial was whether Christopher Greer was armed at the time he was shot. The Court erroneously permitted Mr. Hough to testify on the ultimate question of whether Greer was armed (V5:185-222).

### 5. Error in allowing defense experts, Josef Thundiyil and Krzysztof Podjaski to testify regarding blood

12

***alcohol level being comparable to DUI level.***

Florida law does not prohibit private consumption of alcohol in one's home. The Court erroneously allowed evidence from defense experts Josef Thundiyil and Krzysztof Podjaski that Christopher Greer's blood alcohol level was three times higher than the legal limit (V3:152-155, 157-58, 165). The evidence was not relevant to any material issue at trial. The Court said as much in its curative instruction that told the jury not to hold it against Christopher Greer that he may have been intoxicated in his home (V6:19-20):

> During the course of the video, as happened earlier in the trial, you heard this witness use the reference of blood alcohol level in the context of a DUI in describing the level of intoxication. I want to remind you that there is no allegation that the decedent Christopher Greer was committing a crime or was in the process of committing a crime by having that blood alcohol level. The only purpose of letting you hear that is to give you some real life context in terms of how does that compare to a .08, in terms of what would be a DUI type of offense. But there is no DUI offense here. So please don't hold that against the plaintiff in any way. It's just an example.

The evidence was extremely prejudicial, and the defense made sure that the jury considered the evidence at substantive evidence that law enforcement acted reasonably. Contrary to the Court's admonition, defense counsel in summation specifically asked the jury to hold it against Christopher Greer by suggesting that Christopher's intoxication could have caused his alleged erratic behavior (V6:88):

> Based on the chest blood as well as the vitreous fluid that was taken during the autopsy, he had a blood alcohol of .222, which is three times the legal limit if you were driving a car. . . Dr. Thundiyil had indicated in his testimony that there is emergency room records that he reviewed which shows what his actions are in the past when he drinks that much. And he had to be restrained in the emergency room and he was very

13

agitated. So would that level of alcohol created that type of behavior for this date? Again, up for you to decide.

**F.    The Court erred in failing to question the venire members regarding their bias in favor of law enforcement officers.**

The Court did not permit the parties to ask questions of the venire during voir dire. Plaintiff filed a number of proposed voir dire questions that would inquire about the venire's biases in favor of law enforcement, including (DE367-5:2):

- Do you believe that law enforcement officers are always truthful?

- Do you believe that law enforcement officers have the right to use any amount of force under any circumstances?

- Do you believe the testimony of a police officer, just because the officer is employed as law enforcement?

- Do you believe that a law enforcement officer is legally entitled to utilize deadly force under any circumstance?

The plaintiff also filed a motion for jury questionnaire that proposed similar questions be asked of the venire (DE354, DE354-1:9). The Court denied the motion (DE359) and did not ask the venire members any of the questions during its voir dire (V1:14-160). At most, the Court asked potential jurors whether they were treated fairly by law enforcement; not whether they favored law enforcement officers testimony over civilian testimony (V1:33, 53).

The failure of the Court to question the venire on bias in favor of law enforcement constituted reversible trial error. The Court denies the parties the opportunity to ask questions and police credibility was a critical issue at trial. *See Butler v. City of Camden, City Hall*, 352 F.3d 811, 818 (3d Cir. 2003) (new trial

14

required in a case where the "court's examination at voir dire did not touch upon the subject of potential police bias, and was limited to an inquiry into the panel's arrest background and employment and familial connections to law enforcement"). *Compare with United States v. Nash*, 910 F.2d 749, 753 (11th Cir. 1990) (finding that the failure to ask "three voir dire questions concerning whether the veniremen would tend to believe a law enforcement officer's testimony" was not an abuse of discretion where "the district court's other voir dire questions and its jury charge—suggest that the district court did not abuse its discretion by refusing to ask the questions requested").

Here, the failure to question the venire members about bias was not harmless. The parties did not have an opportunity to question the jury. And, the credibility of the law enforcement defendants was a key issue in this case. Furthermore, although the Court asked the venire members questions that would have elicited biases *against* law enforcement,[5] questions were not asked that would elicit bias *in favor* of law enforcement.

### G.      Cumulative Effect of Errors Require a New Trial

---

[5] For example, those jurors who were victims of a crime and had contact with law enforcement, the Court would ask (V1:33, 53):

THE COURT: Did you come into contact with law enforcement?

PROSPECTIVE JUROR: Yes, I did.

THE COURT: Do you feel you were treated fairly in that process?

PROSPECTIVE JUROR: Yes.

Each of the above cited errors require a new trial. Moreover, the cumulative effect of errors in this trial require a new trial under the cumulative-error doctrine. *Perry v. Alabama Beverage Control Bd.*, 786 Fed. Appx. 204, 211 (11th Cir. 2019). In deciding the cumulative effect of error, the court may consider both preserved and unpreserved error. *United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007).

### H. Renewal of Pretrial Motions and Motions in Limine

Plaintiff renews all pretrial motions, motions in limine, and trial objections. Plaintiff further renews all objections to Defendants' pretrial motions and motions in limine.

### CONCLUSION

This Court should grant a new trial or for relief from judgment and vacate the verdict.

Respectfully submitted,

| *S/ Douglas R. Beam* | *S/ Benedict P. Kuehne* | *S/ Marjorie Gadarian Graham* |
|---|---|---|
| FBN: 515604 | FBN: 233293 | FBN: 142053 |
| **Riley H. Beam** | 100 S.E. 2nd Street | 11211 Prosperity Farms Road |
| FBN: 100512 | Suite 3500 | Suite DE151:129 |
| 25 W. New Haven Ave. | Miami, FL 33131 | Palm Beach Gardens, FL 33410 |
| Suite C | (305) 789-5989 Tel | (561) 775-1204 Tel |
| Melbourne, FL 32901 | (305) 789-5987 Fax | (561) 624-4460 Fax |
| (321) 723-6591 Tel | ben.kuehne@kuehnelaw.com | mgg@appeal.com |
| (321) 723-5926 Fax | | monica@appeal.com |
| eservice1@dougbeam.com | | |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **February 28, 2020,** the foregoing motion was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing motion is being served this day on all counsel of record identified below,

either via transmission of notices of electronic filing generated by CM/ECF or in some

other authorized manner for those counsel or parties who are not authorized to

receive electronically notices of electronic filing:

Plaintiff's Co-Counsel
**Benedict P. Kuehne**
Florida Bar 233293
Kuehne Davis Law, P.A.
100 S.E. 2nd Street, Suite 3550
Miami, FL 33131-2154

**Douglas R. Beam**
Florida Bar 515604
Douglas R. Beam, P.A.
25 W. New Haven Avenue, Suite C
Melbourne, FL 32901-4463

**Marjorie Gadarian Graham**
Florida Bar 142053
Marjorie Gadarian Graham, P.A.
11211 Prosperity Farms Road, Suite DE151:129
Palm Beach Gardens, FL 33410

Counsel for Defendant Cpl. James Haman
**Bruce R. Bogan**
**Melissa Jean Sydow**
Hilyard, Bogan & Palmer, P.A.
105 E. Robinson Street, Suite 201
Orlando, FL 32802

Counsel for Defendant Deputy Diomedis Canela
**Bruce W. Jolly**
Purdy, Jolly, Giuffreda & Barranco, P.A.,
2455 East Sunrise Boulevard, Suite 216
Ft. Lauderdale, FL 33304

By:   *S/ Benedict P. Kuehne*
      **BENEDICT P. KUEHNE**